FILED

2023 Dec-19  AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CARLTON PETERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:22-cv-619-ACA** |
| | ) | |
| **STATE FARM INSURANCE CO.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

In the summer of 2021, heavy rain and wind knocked some of the roofing shingles off Plaintiff Carlton Peterson's roof and onto his yard. Mr. Peterson called a roofing company to inspect his roof. The inspector identified significant wind damage to Mr. Peterson's home and recommended a full roof replacement. Mr. Peterson notified his insurer, Defendant State Farm Insurance Co., of the inspector's assessment.

State Farm sent its own inspector to Mr. Peterson's home. That inspector identified forty-eight areas of damage across Mr. Peterson's roof but recommended attempting to patch Mr. Peterson's roof rather than a full roof replacement. Over the course of several months, various inspectors visited Mr. Peterson's home and offered conflicting opinions. Ultimately, State Farm notified Mr. Peterson that it would pay

for his roof to be patched but would not pay for a roof replacement.

Mr. Peterson filed a two-count complaint in the Circuit of Court of Cullman County, asserting that State Farm breached the parties' insurance contract and refused to pay for the full extent of his insurance claim in bad faith. (*See* doc. 1-1 at 3–8; *accord* doc. 19). State Farm removed, invoking the court's diversity jurisdiction. (Doc. 1; *see also* doc. 13). State Farm now moves for summary judgment as to Mr. Peterson's claims and to strike certain evidentiary exhibits that Mr. Peterson filed in opposition to State Farm's motion for summary judgment. (Docs. 29, 39).

Because there is a genuine dispute of material fact regarding the appropriate way to repair Mr. Peterson's roof, the court **WILL GRANT IN PART** and **DENY IN PART** State Farm's motion for summary judgment. (Doc. 29). The court **WILL DENY** the motion as to Mr. Peterson's breach of contract claim but **WILL GRANT** the motion as to Mr. Peterson's claim of bad faith. Because the court did not consider those evidentiary materials to rule on the pending motion, the court **WILL DENY** the motion to strike **AS MOOT**. (Doc. 39).

## I.    BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the

non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

In opposition to summary judgment, Mr. Peterson relies on his own deposition testimony in which he testifies about what other individuals told him. (*See*, *e.g.*, doc. 38 at 4–5 ¶ 3, at 7 ¶ 7, at 10 ¶ 13). This evidence is hearsay, but State Farm did not object. (*See* doc. 40); *see also* Fed. R. Civ. P. 56(c)(2). Generally, "inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (quotation marks omitted). But in the absence of an objection, such evidence "could and, if material, should be factored into a summary judgment decision." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citing *Clay v. Equifax, Inc.*, 762 F.2d 952, 955 n.2 (11th Cir. 1985) and *Munoz v. Int'l All. of Theatrical Stage Emps., Etc.*, 563 F.2d 205, 214 (5th Cir. 1977)); *see also Brannon v. Finkelstein*, 754 F.3d 1269, 1277 n.2 (11th Cir. 2014) (reiterating that hearsay statements "should be considered on summary judgment . . . because it can be reduced to an admissible form at trial" by

"hav[ing] the hearsay declarant testify directly to the matter") (quotation marks omitted; citation omitted). Consistent with this precedent, the court will consider the hearsay statements to rule on the pending motion.

When Mr. Peterson bought his home, he purchased property insurance from State Farm. (Doc. 29-1 at 7; *see also* doc. 31-2). The insurance policy included coverage for wind and hail damage to his home. (Doc. 31-2 at 9). And the policy stated that State Farm would "pay the cost to repair or replace . . . the damaged part of" Mr. Peterson's home. (*Id*. at 37).

In the summer of 2021, heavy rain and wind knocked some of the roofing shingles off Mr. Peterson's roof and onto his yard. (Doc. 29-1 at 22–23). Mr. Peterson called Yellowhammer Roofing, and they sent an inspector to his home. (*Id*. at 24–25). The inspector told Mr. Peterson that he would need a new roof due to the significant wind damage. (*Id*. at 25; *see also* doc. 29-8). Mr. Peterson notified State Farm of the Yellowhammer Roofing inspector's assessment. (Doc. 29-1 at 26).

Yellowhammer Roofing then sent three different roof replacement estimates to State Farm. (*See* docs. 29-4, 29-5, 29-6). The first estimate, dated September 15, 2021, estimated that the cost to replace Mr. Peterson's roof would be $18,785.04. (Doc. 29-4 at 4). The second estimate, dated December 2, 2021, estimated that the cost to replace Mr. Peterson's roof would be $18,954.26. (Doc. 29-5 at 4). The third estimate, dated April 28, 2022, estimated that the cost to replace Mr. Peterson's roof

would be $19,526.88. (Doc. 29-6 at 4). Mr. Peterson testified that increased costs of roofing materials caused the various price increases. (Doc. 29-1 at 28).

In September 2021, State Farm sent an inspector from Hancock Claims Consultants to inspect the roof. (*See* doc. 29-9). The Hancock Claims inspector identified forty-eight areas of wind damage across Mr. Peterson's roof. (*See id*. at 2–3, 33). The Hancock Claims inspector recommended patching the individual shingles on Mr. Peterson's roof rather than a full roof replacement. (Doc. 29-1 at 31; *see also* doc. 29-10 at 4–5). The estimated cost to patch Mr. Peterson's roof was $1,093.02, and after accounting for the $1,000.00 deductible, State Farm would owe Mr. Peterson $93.02. (*See id*. at 4).

State Farm notified Mr. Peterson of the Hancock Claims inspector's assessment. (*See* doc. 29-10). Mr. Peterson, in turn, notified the Yellowhammer Roofing inspector, who reiterated his prior assessment that Mr. Peterson needed a complete roof replacement. (Doc. 29-1 at 31). State Farm sent Mr. Peterson a check for $93.02 based on the Hancock Claims inspector's assessment that the roof could be patched. (*Id*. at 32–33; *see also* doc. 29-11). On Mr. Peterson's behalf, the Yellowhammer Roofing inspector asked State Farm to conduct a second inspection of Mr. Peterson's home. (Doc. 29-1 at 33).

The second inspector agreed with two aspects of the Hancock Claims inspector's assessment. First, the second inspector also identified forty-eight areas

of wind-related damages across Mr. Peterson's roof. (*See* doc. 29-12 at 6). Second, the second inspector also recommended patching the roof rather than a full roof replacement. (*See id.*). But the second inspector issued an estimate for the cost of work that differed substantially from that reflected by the Hancock Claims inspector. (*See id.* at 4).

Under that estimate, the total cost to patch Mr. Peterson's roof would be $7,887.47. (*Id.*). After deducting depreciation value, the deductible, and the prior claim payment of $93.02, State Farm would owe Mr. Peterson $6,176.38. (*Id.*). Although State Farm sent Mr. Peterson a check for that amount, Mr. Peterson did not deposit the initial $93.02 check or the subsequent check for $6,176.38. (Doc. 29-1 at 33–35; *see also* doc. 30-1 at 2).

Mr. Peterson then called Craft Roofing to get an additional opinion. (Doc. 29-1 at 35). A Craft Roofing inspector examined Mr. Peterson's roof and stated that Mr. Peterson needed a new roof. (*Id.* at 36–37). The Craft Roofing inspector did not offer any written opinions or reports about Mr. Peterson's roof. (*See id.* at 36).

The Craft Roofing inspector's own deposition testimony is not clear regarding his assessment of the damage to Mr. Peterson's roof and his recommendation to fix it. (*Compare* doc. 31-3 at 6, *with id.* at 44–46). The inspector initially testified that he thought Mr. Peterson's home "had adequate damage" such that he recommended a full roof replacement. (*Id.* at 6; *accord id.* at 44). The inspector later testified that

he "could have" recommended that the roof be patched. (*Id*. at 45). But he also testified that he could not remember whether there was any damage to Mr. Peterson's roof. (Doc. 31-3 at 46).

Around October 2021, State Farm asked Yellowhammer Roofing to conduct a brittle test on Mr. Peterson's roof to see if Yellowhammer Roofing could patch the damaged shingles. (Doc. 29-1 at 30; *see also* doc. 29-7). The patch attempt was not successful because the roof shingles were too brittle and putting in new shingles could cause leaks. (Doc. 29-1 at 37). According to Mr. Peterson, if Yellowhammer Roofing patched the damaged shingles on Mr. Peterson's roof, that work could further damage Mr. Peterson's roof and cause the roof to leak. (*See id*.).

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers State Farm's arguments regarding Mr. Peterson's claims in turn.

### a.   Mr. Peterson's Breach of Contract Claim (Count One)

In Count One, Mr. Peterson alleges that State Farm breached the insurance contract when it refused to pay for the roof replacement. (*See* doc. 19 ¶¶ 37–55). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3)

the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (quotation marks omitted).

State Farm contends that it is entitled to summary judgment on this claim because its only obligation under the insurance policy was to pay to repair the damaged parts of the roof, which State Farm contends it did. (Doc. 34 at 27–28). Mr. Peterson responds that there is a genuine dispute of material fact regarding the appropriate way to repair his roof given the extent of its damage. (*See* doc. 38 at 19–20). The court agrees with Mr. Peterson.

The insurance policy obligates State Farm to "pay the cost to repair. . . the damaged *part* of the" roof. (Doc. 31-2 at 37) (emphasis added). There are forty-eight areas of wind damage across Mr. Peterson's roof. (*See* doc. 29-9 at 2–3, 33). The only portion of Mr. Peterson's roof that did not sustain wind damage was the "Right Elevation/North" side. (*See id*. at 3, 33). Although there is no dispute that some parts of the roof were not damaged, there is conflicting evidence about whether it is possible to repair those parts without damaging the rest of Mr. Peterson's roof.

State Farm's inspectors opined that the roof could be patched, but the Yellowhammer Roofing inspector disagreed with this assessment. (*See* doc. 29-1 at 25–26, 29–37) (testifying as to the conflicting recommendations). Specifically, after the Yellowhammer Roofing inspector conducted a brittle test, he determined that he

could not patch the roof because the shingles were too brittle and the roof would leak. (*See id*. at 37).

State Farm relies primarily on two cases for its argument that it has fully performed under the contract. (*See* doc. 34 at 24–25) (citing *Graffeo v. State Farm Fire & Cas., Inc.*, 628 So. 2d 790 (Ala. Civ. App. 1993) and *Padgett v. State Farm Fire & Cas. Co.*, 714 So. 2d 302 (Ala. Civ. App. 1997)). But State Farm's reliance on these cases is misplaced.

In *Graffeo*, State Farm insured a rental home that had "asbestos shingles for siding." 628 So. 2d at 790. Ten of those shingles suffered wind damage, and the insured filed a claim with State Farm. *See id*. The insurance policy contained similar language to Mr. Peterson's policy: "State Farm w[ould] cover the replacement cost of that part of the building damaged."  *Id*. at 791 (quotation marks omitted). A dispute arose as to how to repair those shingles because the insured "insist[ed] that the safe and reasonable method of repairing the damaged asbestos siding [wa]s to cover the rear of the dwelling with cedar siding to prevent the asbestos from being released into the air." *Id*. at 790. But there was substantial evidence that there were other ways to safely replace the asbestos shingles without releasing asbestos into the air *and* without installing the cedar siding. *See Graffeo*, 628 So. 2d at 790.

The trial court granted summary judgment in favor of State Farm, and the Alabama Court of Civil Appeals affirmed. *See id*. at 791. The court began by

Case 5:22-cv-00619-ACA   Document 44   Filed 12/19/23   Page 10 of 13

discerning the "common meaning" of replace: "to take the place of or to put something new in the place of." *Id.* (quotation marks and alteration omitted). Based on this common meaning, the court concluded that "under the terms of the contract[,] . . . State Farm is obligated to pay only for the replacement of those shingles which were actually damaged, rather than for installing cedar siding across the entire rear of the building." *Id.*

*Graffeo* stands for the proposition that an insured is not entitled to its preferred method of performance so long as there is a way to perform under the contract. *See* 628 So. 2d at 790–71. But Mr. Peterson testified that his roof failed the brittle test, and there are conflicting professional opinions regarding whether Mr. Peterson's roof can be patched. (*See* doc. 29-1 at 25–26, 29–37). So, *Graffeo* is inapposite.

And *Padgett* fares no better. In *Padgett*, the insured failed to rebut State Farm's evidence that the roof could be repaired. *See* 714 So. 2d at 304. But here, Mr. Peterson has presented evidence of conflicting professional opinions regarding whether Mr. Peterson's roof can be patched. (*See* doc. 29-1 at 25–26, 29–37).

*Padgett* also relied on *Graffeo* for the proposition that insurance contracts that obligate State Farm to "replace" damaged portions of a roof do not obligate State Farm "to pay to replace the entire roof." *See Padgett*, 714 So. 2d at 305. But again, there is conflicting evidence regarding whether Mr. Peterson's roof can be patched.

10

(*See* doc. 29-1 at 25–26, 29–37). This evidence creates a genuine dispute of material fact regarding whether State Farm has fully performed under the policy.

Mr. Peterson has presented evidence that it is not possible for State Farm to perform under the parties' contract—*i.e.*, repair the damaged part of his roof—without a full roof replacement. This is a triable issue of material fact. Accordingly, the court **WILL DENY** State Farm's motion as to Count One.

    b.  <u>Mr. Peterson's Bad Faith Claim (Count Two)</u>

In Count Two, Mr. Peterson asserts a claim of bad faith under two different theories: a "normal" bad faith claim and an "abnormal" bad-faith-failure-to-investigate claim. (*See* doc. 19 ¶¶ 56–64); *see also Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1186 (11th Cir. 2023) (describing the "two methods of establishing" the tort of bad faith under Alabama law) (quotation marks omitted). State Farm asserts that it is entitled to summary judgment for this claim because it had "a reasonably legitimate or arguable reason for refusing to pay for the full roof." (Doc. 34 at 32). The court agrees.

"The tort of bad faith consists of the following essential elements: (1) a breach of an insurance contract; (2) a refusal to pay the claim; (3) the absence of an arguable reason for failing to pay; and (4) the insurer's knowledge of such an absence." *Walker*, 59 F.4th at 1186. And "[i]f a plaintiff is traveling under the failure-to-investigate theory[,] . . . there is another essential element: (5) the insurer's

intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id*. at 1186–87 (quotation marks omitted). But under either theory, "the tort of bad faith requires proof of the third element: absence of a legitimate reason for denial." *Id*. at 1187 (quotation marks omitted; alteration accepted).

"When the insurer had an arguable reason for its denial decision and there is no genuine issue of material fact on that point, summary judgment is warranted." *Id*. at 1187 n.6. The existence of "conflicting professional opinion[s]" is strong evidence that an insurer had an arguable reason for its failure to pay. *See Walker*, 59 F.4th at 1188 (collecting cases); *see also Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) (holding that "conflicting evidence" regarding insurance coverage "defeats [an insured's] attempt to make a triable issue on the question of [an insurer's] bad faith"). Put differently, "[w]hen a claim is fairly debatable, the insurer is entitled to debate it." *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (quotation marks omitted).

And here, there are conflicting professional opinions. (*See* doc. 29-1 at 25–26, 29–36); *see also supra* at 7–11. Accordingly, the court **WILL GRANT** State Farm's motion as to Count Two because State Farm had an arguable reason to deny a full roof replacement.

c. State Farm's Motion to Strike (Doc. 39)

State Farm moves to strike certain evidentiary materials filed by Mr. Peterson. (*See* doc. 39). The court did not consider these evidentiary materials to rule on the pending motion. Accordingly, the court **WILL DENY** the motion to strike **AS MOOT**.

## III.   CONCLUSION

The court the court **WILL GRANT IN PART** and **DENY IN PART** State Farm's motion for summary judgment. (Doc. 29). The court **WILL DENY** the motion to strike **AS MOOT**. (Doc. 39). This case will proceed to trial as to Mr. Peterson's breach of contract claim.

The court will enter a separate partial judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this December 19, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE